PREWITT, ET AL. vs. JEWELL.

*Que.* Is the lien of a judgment destroyed by the death of the debtor?

### ERROR to Boone Circuit Court.

D. TODD, for Plaintiffs,

Assigns the following as sufficient reasons for a reversal of the judgment of the circuit court:

1. That the lien of a judgment creditor expires upon the debtor's death upon his real estate.

2. The lien at law is a general lien, and not becoming specific by a levy before the death, upon any portion of the realty, the judgment creditor cannot acquire a general lien upon the lands of the deceased, after the death.

3. Upon the death of a judgment debtor, the debts are fixed in a course of administration, and a court of law has no jurisdiction to enforce a collection of any judgment by *scire facias,* or any other remedy.

Prewitt, et al. vs. Jewell.

4. The lien of such judgment upon the lands, is a statutory remedy, and can only be enforced according to the statute, at law; and a court of equity has no jurisdiction to enlarge the lien, or enforce it.

5. When the lands of a judgment debtor are sold upon a junior judgment, subject to the prior judgment, neither at law, nor equity, can the purchaser be subjected to the payment of the elder judgment.

6. If the elder judgment creditor fails to enforce his lien by execution before the debtor's death, the court cannot in law or equity revive the lien, or enforce the collection of the debt.

7. It is a misjoinder to make the purchaser of the land, and the administrators of the deceased debtor, joint parties, for the same judgment cannot be entered.

8. It is a misjoinder to make the heirs of the deceased debtor parties with the purchaser and administrators, when the judgment is not for the realty, but for a personal debt.

LEONARD & GORDON, for Defendant.

POINTS AND AUTHORITIES.

1. The lien of a judgment upon the real estate of a debtor, is not extinguished by the death of the judgment debtor. Rev. Statute of 1835, title Judgments and decrees, sec. 2, 3, 6 and 7; title Executions, sec. 4 and 6; Rankin & Schabell vs. Scott, 12 Wheat. Rep. 177 ; Taylor vs. Thompson, 5 Peter's Rep. 371.

2. In a proceeding to revive the lien of a judgment, the heirs, personal representatives, and terre tenants ought all to be made parties. Rev. Stat. of 1835, title Judgment and Decrees, sec. 7; 6 Bac. Abr. 115; executors of Morton vs. terre tenants of Croghan, 20, John. Rep. 106; Jackson vs. Shaffer, 11 John. Rep. 515.

SCOTT, J.

Jewell, in October, 1840, obtained a judgment against George Northcut in a justice's court, and immediately thereafter filed a transcript thereof in the office of the clerk of the circuit court of Boone county. Afterwards others obtained judgments in like manner against Northcut, and filed transcripts of them. On these last judgments executions were issued, and the lands of Northcut sold to satisfy them. Prewitt, the plaintiff in error, and Oliver Parker, since deceased, became the purchasers. In the interval between the issuing of the executions, and the

Prewitt, et al. vs. Jewell.

sale under them, Northcut died. Jewell afterwards in October, 1843, sued out a *scire facias* to revive his lien against the administrator and heirs of Northcut, and the purchasers of the land at the sheriff's sale. On a demurrer to the *scire facias* judgment that the lien be revived was given, to reverse which Prewitt has sued out this writ of error.

The main question presented by the record, is whether the lien of a judgment is extinguished by the death of the judgment debtor. If the death of a judgment debtor produce such an effect, it must be by reason of some statutory provision, or of some manifest incongruity between the existence of the lien and laws whose meaning and construction are beyond all question. Such an idea borrows no support from the common law, or early statutes made in aid thereof. After the statute of 13 Ed. 1, subjecting lands to execution, after the death of the ancestor against whom a judgment had been rendered, a *scire facias* lay on the judgment to revive it against the heir. Jefferson vs. Morten, 2 Saun. 6. In this State in 1807, judgments were declared to be liens on the real estate of the debtor, and made to continue in force for five years. By an act passed in 1822, the duration of the lien was limited to three years, and provision made for the revival of it against the heirs of the debtor. The same provision is in the revision of 1825, and is continued in that of 1835. The law relative to administration passed in 1825, section 49, permitted executions to issue against a decedent's estate, after the lapse of eighteen months from the grant of letters testamentary or of administration. A power to sell deceasd person's estates on execution, being entirely subversive of the administration law, and rendering a compliance with its provisions, relative to the classification of demands impossible, the act of the 30th December, 1826, was made, which prohibited any execution from issuing on any judgment, or decree rendered against the testator, or intestate, in his life time, or against his executors or administrators after his death, but directed all such demands to be classed, and proceeded on in the probate court. By some oversight this act was omitted in the revision of 1835; but notwithstanding the omission executions were not issued against the estate of deceased persons in the hands of executors or administrators; however, to secure this exemption beyond all controversy, the act of Feb'y. 1, 1839, was enacted, which directs that no execution shall be issued against the lands, tenements, goods, chattels, or effects of any testator or intestate, upon any judgment against an executor or administrator as such ; and as no execution can issue on a judgment against a deceased person without a *scire facias* to revive it against the execu-

tor or administrator, and as the same reason which operates to withhold an execution on a judgment against the executor or administrator would withhold it on a judgment against the deceased, we are of the opinion that this act afforded to a deceased person's estate the same protection against executions that was given by the act of 1826.

We thus have the estate of deceased persons, freed from executions. If there is a lien it must be enforced in some other way than by execution. Is there any thing in the administration law which negatives the continuance of the lien, or which cannot be reconciled with its existence? The lien is given by law, and by law it can be modified and controlled. The administration law classes the demands against an estate, and after providing that funeral expenses, expenses of the last sickness, and debts due the State, shall constitute the first three classes, directs that judgments rendered against the deceased in his life time, shall constitute the fourth class; thus giving those judgments priority over all other debts except those above mentioned. It is then provided, that all demands against any estate, shall be paid by the executor or administrrator, as far as he has assets, in the order in which they are classed, and no demand of one class shall be paid until all previous classes be satisfied; and if there be not sufficient to pay the whole of any one class, such demands shall be paid in proportion to their amounts. The personal estate is made the primary fund for the payment of debts, and in the event of a deficiency of personal assets, the lands may be sold, and when sold the purchaser takes it, discharged from all liability for the debts. Can the idea of a lien exist with the above provision for the payment of debts? The fourth class of demands consists entirely of judgments rendered against the deceased in his life time. The argument assumes that those judgments are liens on the land. If one judgment of the class is a lien, then all the other judgments of that class are liens, and there are no other debts in the class than judgments. If the judgments are liens, their priority will depend on the date of their rendition, and if they have been rendered at different times, the oldest will have priority, and the others will be satisfied in the order of their dates. If the personal assests should prove insufficient to pay the debts, and the lands be sold for that purpose, if the sum realized from the sale should be inadequate to the satisfaction of all the judgments, then the oldest judgment must be satisfied first, the next oldest in the next place, and so on of the rest, in the order of their dates. This must be the consequence if the lien exists. Is not then the existence of the lien in direct conflict with the provision above cited, that if there be not sufficient to pay the whole of any one class,

the demands of that class shall be paid in proportion to their amounts? If the lien conflicts with this provision *a mutto fortiori*, it does with that which declares that no demand of one class shall be paid until all previous classes be satisfied. The rule of construction provided for in the revised laws of 1835, is that all the statutes shall be deemed to have passed on the same day, notwithstanding they may have been passed, or taken effect at different times. They are all to stand unless found so repugnant that they cannot subsist together, in which event the last law shall prevail. The act concerning judgments and decrees, by which the lien is created, was approved March 19th, 1835. And the law relative to administrations was approved on the 21st March, 1835. So the law relative to administrations which is inconsistent with that relative to liens, will prevail. Scott vs. Whitehill & Finch, 1 Mo. Rep.

There is no hardship in this result. It may happen in a particular case, that a judgment creditor may be injured by this construction of the law, but in most cases it will be otherwise. If the lien of the judgment is destroyed by the administration law, that law makes ample reparation for the injury. It gives preference to judgment debts due by the deceased over all others except funeral expenses and expenses of last sickness, which are generally small, and debts due the State, which rarely exist; and subjects not only the lands but all the personal estate to the payment of those judgments, before any other debt can be paid, except those above mentioned. Judgment creditors, in nineteen cases out of twenty, would prefer the security afforded by the administration law for the payment of their debts, to that offered by a bare lien on the land.

The statute directs that the sale of lands under a junior judgment, shall pass the title of the defendant, subject to the lien of all prior judgments or decrees then in force. The land on which Jewell's lien attached having been sold under a junior judgment subject to that lien, and that lien becoming afterwards extinct, an interest in the land will result to the estate of Northcut, which may be subjected to the payment of its debts. In what manner that object shall be obtained, I will not now determine.

NAPTON, J.

The only question in this case, is whether the lien of a judgment is extinguished by the death of the judgment debtor, and this question is

to be determined by the statute law of this State, as it stood previous to the revision of 1845.

The act concerning judgments and decrees, declares, that they shall be a lien on the lands of the debtor situate in the county, where the judgment or decree is rendered; that they shall commence on the day of the rendition of the judgment, and continue for three years, subject to be revived, &c.; and that the sale of lands under a junior judgment, shall pass a title subject to the lien of all prior judgments. This act further makes provision for the revival of a judgment, not only against a judgment debtor himself but against his legal representatives, the *terre-tenants*; or other person occupying the lands.

So far then, the existence of the lien, as well after, as before the death of the judgment debtor, is expressly provided for, and unless there be some law which in terms or by implication repeals this statute, or that portion of it to which we have referred, the plaintiff in error cannot maintain his position. The act concerning administration, it is contended, has this effect.

One section of the administration law, which is apparently inconsistent with the law concerning judgments and decrees, is the 7th section of the 4th article, which says, "that any person having any demands against an estate, may establish the same by the judgment, or decree of some court of record, and exhibit a copy of *such* judgment, *whether rendered before or after the death* of the deceased, to the county court." This section is so obviously either a *misprint* or a careless and unsuccessful attempt to comprehend in one sentence two heterogeneous ideas, that it is entitled to no weight in fixing the construction of another act, clearly and unequivocally expressed. If it were designed by this section, as was probably the case, to require the judgment creditor to present a copy of his judgment to the county court, whether it be a judgment against the deceased, or has been rendered against his representatives, it leaves the question of the lien where the first section of the same article placed it, and to that section alone we are referred for the repeal, or modification of the statute concerning judgments and decrees.

This section provides for a classification of all demands against an estate, and places judgments against the deceased in the fourth class. All the demands in a specified class are to be paid *pro rata*, and no demand is paid until all the demands in the class or classes preceeding it, have been discharged.

It will be observed that all judgments are not liens; they are only liens upon the real estate of the debtor, lying in the county where the

judgment is rendered. A person may have no real estate in the county where he resides, and where a judgment is obtained against him, and such a judgment is no lien upon his real estate lying in another county; or the debtor may have been sued in another county from that in which he lives, and the judgment will be no lien upon his lands in the latter county. The two acts, therefore, may both stand; they were passed at the same session, and though one may have been approved by the executive a week sooner, or later than the other, they are to be construed as having taken effect on the same day.

Admitting, however, that the clause in the first section of the 4th article of the administration law, is absolutely inconsistent with the provisions of that portion of the statute concerning judgments and decrees, which provides for the continuance of the lien for three years, without regard to the death of the judgment debtor, upon what principle shall we make the latter statute, the several sections of which seem to have been framed with deliberation and caution, yield to a solitary clause in a single section of the administration act? Shall it be on principles of general policy? Let us look for a moment at this view of the subject.

The lien of a judgment is given to a creditor as a security for the payment of his debt; that lien, the law declares, shall bind the land for three years. It can not or ought not to be forfeited, except by some act of the judgment creditor. Upon the faith of this lien, the creditor remains inactive, and no further steps are taken to molest the debtor. Would creditors take confessions of judgment, a very common security, and give them indulgence upon the strength of such security, if the death of the debtor could at any moment deprive them of this security? Would it be any compensation to the creditor, who relies upon his judgment, and the sufficiency of the land bound by that judgment to pay his debt, to be turned round to a *pro rata* division of this land with fifty subsequent judgment creditors upon an insolvent estate, and thereby get perhaps ten cents in the dollar of his debt?

There may be cases where the creditor, by being placed in the fourth class, would get the whole of his debt; but in such cases, it seldom matters much, whether he has any judgment at all. We look to the cases in which creditors *generally* seek securities of this kind, and what are they? Are such confessions of judgment *usually* taken where the debtor is solvent, and possessed of property amply sufficient to meet his debts, and with no pressing demands against him?

It is not from such men that security is desired or needed. It is where the debtor is already tottering upon the verge of insolvency,

---

with debts pressing hard upon him, and a feeling of insecurity already awakened among the community, that the creditor presses forward for his judgment. After this is obtained, which the law says shall bind the land, he ceases the proceeding, and enables the debtor, *if* time will be of any avail, to extricate himself from his embarrassments. But this indulgence would not be extended, if the creditor is told, that in case of his debtor's death, his lien is gone, and he must be paid *pro rata* under the administration law.

Authorities are needless to show that where laws are passed at the same time, the courts must give effect to both, if possible. Applying this rule of construction here, a limited meaning is necessarily given to the term judgment, as used in the clause of the administration act, to avoid a conflict with various provisions of the law concerning judgments and decrees.

The act of 1838 having prohibited executions against a dead man's estate, the judgment creditor must take his judgment to the county court, and procure an order of sale. This was not, however, the law in 1835.

Judge McBRIDE not having heard the argument of this cause, and therefore declining to give any opinion, the judgment of the circuit court will be affirmed.

---

NOTE.—On a motion to quash the writ of error in this case, it was held: That the State could sue out a writ of error to an arrest of judgment in a criminal case.